WEIDMANN SILK DYEING COMPANY

*v.*

EAST JERSEY WATER COMPANY, MONTCLAIR WATER COMPANY AND ACQUACKANONK WATER COMPANY.

[Decided January 17th, 1918.]

1. The Chancery act (1915), by rule 51 annexed, which provides that any pleading may be objected to by motion on the ground that it discloses no cause of action, defence or counter-claim, introduces, in effect, a demurrer to an answer in chancery; prior thereto a demurrer to an answer did not lie in any form.

2. Although demurrer to an answer would not formerly lie, courts of equity have always had the power to strike out pleadings (including answers) as sham and frivolous, the same as courts of common law.

3. Upon a state of pleadings which admittedly show that a diversion of water by an upper, away from a lower, riparian owner is sensible and appreciable, it is unnecessary and undesirable to send a complainant to final hearing and permit of the taking of voluminous testimony in order that the equitable terms upon which an injunction should issue can be ascertained, as it can readily be done on motion, with leave to take affidavits, if necessary.

4. Complainant seeks an injunction upon the equitable condition that it shall issue only in case defendants refuse to make compensation, and defendants by their answer offer to make compensation if the complainant's right be established.—*Held*, complainant's right being established, that the court, in virtue of such consent, has the power to order compensation made.

5. If an upper riparian owner diverts water from a lower one, for the purpose of supplying water companies or municipalities which have the ultimate power of condemning the water rights in question, they will be allowed to do so upon compensation being made in aid of the upper owner's diversion for public use, exercising their own rights of condemnation in connection with contracts with the diverting riparian owner.

6. There is no estoppel against a lower riparian owner's protection of its rights, as such, by mere silence or failure to give notice, or bring suit; this legal right of the riparian owner is barred only by a grant, or by uninterrupted enjoyment by an upper owner for the full prescriptive period of twenty years.

7. A lower riparian owner, who, with others, pollutes a stream from which an upper riparian owner diverts the water, is not thereby estopped from having appropriate injunctive relief upon the principle that it does not come into court with clean hands, because that maxim is confined to misconduct in regard to, and connected with, the matter in litigation; and it does not extend to misconduct, however gross, with which the opposite party has no concern.

8. Rule 72 under the Practice act (1912) provides that in case a new trial is granted it shall only be of the question or questions with respect to which the verdict or decision is found to be wrong, if separable. That rule is now rule 131 of those promulgated by the supreme court, June term, 1913, and by this later one the rule as to limited retrials is expressly made applicable to appeals. *Semble*, that the rule extends to new trials granted by the court of errors and appeals irrespective of the express provision in rule 131.

9. Where one of the issues in a trial at law between a plaintiff and three defendants was as to whether the latter were all bound on the question of liability, which was established in a former action at law between the same plaintiff and one of the same defendants, the ground of estoppel in the second suit being that the liability so established as against the party who was defendant to the former action, is also established against the other two, because they are successors in interest of,

and parties in privity with, it, and that, therefore, all of the defendant parties are bound when judgment passes against them in the second suit, although a new trial is granted on the question of damages only—it seems that all three are so bound.

10. Where the bill alleges and the answer does not deny (and therefore admits) that defendants are impounding water of a river and diverting it away from complainant, a lower riparian owner, in quantities exceeding twenty-three million gallons daily, by reason whereof the natural flow of water has been so diminished that the banks and bed of the river are rendered bare—*Held,* upon these admitted facts, that the damage to the complainant is sensible and appreciable and that the maxim *de minimis non curat lex* does not apply.

11. An answer in chancery must be consistent and a defendant may not insist upon a defence residing in an averment which is inconsistent with, and repugnant to, an admission made in the same pleading.

12. An answer in chancery may contain within itself such circumstances as will suffice to deprive it of all efficacy.

13. If a pleading appear on its face to be untrue in one of its essential allegations it is bad on demurrer.

14. A defendant may not make disserving admissions in an answer, responsive to a bill, and then, by way of new matter, plead facts inconsistent with those admissions; in other words, a defendant may not, by self-serving statements, avoid the effect of disserving ones—at least not unless they amount to confession and avoidance.

15. Averments in an answer examined and found not to constitute a defence to the bill.—*Held,* that the answer should be struck out upon equitable terms to be settled on motion and on notice.

----

On bill, &c.   On motion to strike out answer.   On motion to settle decree.

*Messrs. Griggs & Harding* (of Paterson), for the motion.

*Messrs. Humphreys & Summer* (of Paterson) and *Gilbert Collins* (of Jersey City), opposed.

WALKER, CHANCELLOR.

This is a motion to strike out the answer filed by the three defendants. It is the equivalent of a demurrer.

Prior to the passage of the Chancery act (1915), which by rule 51 thereto annexed, provided that any pleading may be objected to by motion on the ground that it discloses no cause

400          CASES IN CHANCERY, 1917–1918.

Weidmann Silk Dyeing Co. v. E. Jersey Water Co.    88 N. J. Eq.

of action, defence or counter-claim, this motion would not have lain. The rule (51) is now 67 of the rules of this court which took effect January 1st, 1917. Before the passage of the Chancery act (1915) a motion to strike out an answer on the ground that it disclosed no defence to the relief sought, did not lie. The then rule 213 of this court allowed objections to pleadings to be made by motion, and this has been held to be the equivalent of a demurrer to a bill. *Schulz* v. *Ziegler, 80 N. J. Eq. 199, 202.* And of exceptions to an answer. *Condict* v. *Erie Railroad Co. 77 N. J. Eq. 282.* Prior to the passage of the Chancery act (1915) a demurrer to an answer did not lie in any form. See *Condict* v. *Erie Railroad Co., supra.*

The language of the present rule 67 is a clear departure from that of the former rule 213. It is that any pleading may be objected to by motion on the ground that it discloses no cause of action, defence or counter-claim. By its very terms it extends the motion to strike out answers, for they are defensive pleadings, and the rule says that a pleading may be objected to because it discloses no defence. It must be apparent that the reason that demurrers did not spring into use contemporaneously with the institution of answers in chancery is, that originally the complainant in the bill called upon the defendant to answer his allegations and make discovery on oath, and, what the defendant set forth was therefore evidence in the cause. As the answer was formerly regarded as evidence (and still is, if the bill prays for answer upon oath), there sprung up a method of objecting to defective answers, known as exceptions; and exceptions lay for scandal, impertinence and insufficiency. While a demurrer to an answer (whether or not under oath), insufficient because it disclosed no defence, might with propriety have long ago been substituted for an exception, the fact is that this departure from precedent was not inaugurated in our state until two years ago.

The motion to strike out the answer is rested upon two grounds: (1) that the matters pleaded constitute no defence, and (2) that if the answer is not wholly bad then certain specific parts should be struck out because irrelevant, immaterial and impertinent, and certain other parts because evasive, con-

tradictory and repugnant to certain admissions made in the answer.

Although a demurrer to an answer would not formerly lie, courts of equity have always had the power to strike out pleadings (including answers) as sham and frivolous, the same as courts of common law. *Stanbery* v. *Baker, 55 N. J. Eq. 270, 271.* And rule 53 of the present edition (chancery rules 1917) recognizes this power.

The defendants contend that the answer presents a valid defence, but if not plainly so, that it is at least arguable that it does in whole or in part, and that, therefore, the motion should be denied, or be put over until the hearing, because rule 67 further provides that on the hearing of a motion to strike out, the court, in its discretion, may order the application to stand over until hearing. It is further provided that if the objection be to a bill or counter-claim, the court may require the same to be answered on such terms and conditions as may be ordered. This is significant, because, if an answer should not be struck out or should be struck out only in part, the court could not order the complainant to reply to the answer, for this would deprive him of his election to go to hearing on bill and answer, and therefore the rule properly and purposely leaves it to the complainant's discretion whether to reply or go to hearing on bill and answer. Of course, if the answer be struck out in its entirety the complainant would be entitled to a decree either as on confession or on proofs taken *ex parte,* unless leave were given to answer over.

While the lord-chancellor in ancient times performed strictly legal functions and held an ordinary legal court, yet the extraordinary court or court of equity, that is, chancery, had become a court of greatest consequence in Blackstone's day. *3 Bl. Com. 48, 50.* And suits in equity in our state are probably now as numerous as those at law; and the parties litigate here at arm's length upon principles governing their rights residing in the great body of equity jurisprudence which has been evolved in England and this country, and particularly in this state. There is, therefore, now as much reason that the defendant, being subpœnaed to answer a bill in chancery, shall set up in his

answer a lawful defence to the complainant's claim, if any he
have, as that a defendant in a suit at law, summoned to answer
the plaintiff's demand, shall set up a valid defence in law.    In
other words, there is no longer any reason residing in archaic
notions of difference in procedure between courts of equity and
of law that renders a demurrer to an answer in chancery inap-
propriate.

A view of the allegations of the bill and averments in the
answer are necessary to an understanding of the motion *sub
judice.*

The bill alleges that from the year 1887 continuously until
the present time the complainant has been seized in fee, and
has been in the possession and occupation of, certain silk dye-
ing works and premises, situate in the city of Paterson, consist-
ing of a united tract of land whereon are erected buildings and
other property constituting the plant which during all that time
has been used and now is used by the complainant in its business
of dyeing goods, which premises are bounded on the northerly
side thereof by and along the northerly line of the Passaic
river as the same runs for a distance of about one thousand
five hundred feet, and extend over the whole bed of the river
along, the distance of one thousand five hundred feet and con-
tain about fifteen acres of land, exclusive of the bed of the
river.    That the Passaic river is, and from time immemorial has
been, a natural water course flowing from its source above and
through the city of Paterson, and through and along the prem-
ises of the complainant ultimately to its outlet into Newark
bay in this state; the premises being situated on the Passaic
river wholly above the point where the tide ebbs and flows, and
that the river at and above the premises of the complainant is
a private stream or water course.    That before and at the time
of the impounding, confining, interruption and diversion of the
water in the bill set forth, the complainant of right ought to have
had and enjoyed, and still of right ought to have and enjoy, the
benefit and advantage of the waters of the river, which during
all that time of right ought to have run and flowed in its nat-
ural, usual and accustomed manner, and until the impounding,
confining, interruption and diversion thereof thereinafter men-

tioned, of right had run and flowed in its natural, usual and accustomed manner, and still of right ought to run and flow into the lands and premises and dye works of the complainant, whereby the complainant would be supplied with water sufficient and proper for the operation and use of its business in dyeing goods. That prior to the impounding, confining, interrupting and diversion of the water as thereinafter mentioned and until the impounding, confining, interrupting and diversion thereof the complainant had used the water of the river for the purpose of dyeing goods in its business. That the defendant, the East Jersey Water Company, is a private corporation organized under the general corporation laws of this state. That from June, 1906, to June, 1912, the defendant the East Jersey Water Company, at a dam, reservoir and works owned and operated by it at Little Falls, in the county of Passaic, on the Passaic river above the premises of the complainant, has impounded, held back and diverted from said Passaic river, during the last-named six years, an average daily quantity of sixteen million gallons of water, and conveyed from the river to other places the last-named water which was not returned to said river, and which otherwise would have flowed through the complainant's premises. That from June, 1912, continuously until the present time the defendants, the East Jersey Water Company, the Montclair Water Company and the Acquackanonk Water Company, all corporations, by concert and agreement among themselves, have jointly owned and operated the works at Little Falls for their joint and common benefit, and by concert and agreement have jointly diverted from the Passaic river at Little Falls for their joint and common benefit, quantities of water averaging from about twenty-one million gallons daily during the year 1912 to about twenty-three million gallons daily during the year 1914, and that from the year 1914 until the present time, and at the present time the three defendants, at the works at Little Falls, have constantly, jointly diverted, and are now jointly diverting, quantities of water from the Passaic river for their joint and common benefit, considerably in excess of twenty-three million gallons daily, and during that time have, and now are, conveying the same from

404        CASES IN CHANCERY, 1917–1918.

Weidmann Silk Dyeing Co. v. E. Jersey Water Co.    88 N. J. Eq.

the said Passaic river to other places and consuming the same for their joint and common use, so that the same has not been and is not returned to the river, and has not, and does not, flow through the complainant's premises as it otherwise would, and that the three defendants are still diverting the last-named quantities of water from the Passaic river, and intend to do so hereafter in constantly increasing daily quantities. That the complainant has operated its plant and conducted its business therein continuously from the year 1887, or thereabouts, until the present time; during which time the property of the complainant has been and now is of great value, as thereinafter stated; and the complainant has employed and now employs several hundred employes daily, and has done and now does a large and profitable business. That the water which has been so impounded, confined, interrupted and diverted and prevented from flowing into the works of the complainant has been during all of such time necessary for the use of the complainant in supplying its works for the use and operation of its said busi-. ness therein, and would have been used during all of the time by the complainant in its business, if the complainant had not been deprived of the use thereof by the defendants as aforesaid; and the complainant, for want of the water of which it was deprived by the defendants, could not use its works nor carry on its business therein as it otherwise would have done. That by reason of the impounding, interruption, and diversions of the water by the defendant the East Jersey Water Company during the period from June, 1906, to June, 1912, the complainant was deprived of the use of the water in its business, for which deprivation the complainant recovered damages by judgment in an action at law in the supreme court of New Jersey, commenced on or about June 13th, 1912, against the defendant the East Jersey Water Company in the sum of $22,212.00, together with costs, the amount of which judgment together with costs and interest, the said defendant the East Jersey Water Company paid to the complainant on or about March 12th, 1914. That the legal right of the complainant to recover against the defendant the East Jersey Water Company for the impounding, interrupting and diversion of the water at the dam, reservoir

CASES IN CHANCERY, 1917–1918.     405

88 *N. J. Eq.*    Weidmann Silk Dyeing Co. *v.* E. Jersey Water Co.

and works, at Little Falls, was established at law in the action
at law, and that the impounding, interruption and diversions
of the said defendants, the Montclair Water Company and the
Acquackanonk Water Company, jointly with said defendant the
East Jersey Water Company, were made at the dam, reservoir
and works at Little Falls theretofore owned and operated by
the defendant the East Jersey Water Company, and that the es-
tablishment of the right in the action at law against the East
Jersey Water Company for the diversions at the dam, reservoir
and works at Little Falls, operated to establish and did estab-
lish the right of the complainant to recover against the three
defendants for the joint impounding, interruption and diver-
sions at the works at Little Falls by them; and the right of
the complainant is fully established by the action at law with
respect to the water as against each and all of the three defend-
ants for the purposes of the relief prayed. That the complain-
ant's plant consists of the land and many buildings erected
thereon exceeding in value the sum of $1,000,000. That the
plant may be used for dyeing purposes, and for many kinds of
manufacturing and other purposes. That the right to the nat-
ural, undiminished and uninterrupted flow and use of the water
of the river at the plant is a large element of value in it and for
its use in the business of dyeing goods, or for any of the various
uses to which the plant may be put. That the said impounding,
interruption and diversions have greatly and materially reduced
the quantity of water which would naturally flow to and past
complainant's premises during the time of the diversions, and
thereby have greatly diminished the value (of the use) of the
plant. By reason of which impounding, interruption and di-
versions, the natural flow of the water of the river has been so
diminished that its banks and bed at the complainant's prem-
ises are rendered bare, unsightly, noxious and unhealthy, due
to the deposit of material which the natural flow of the river
would have carried away, if the impounding, interruption and
diversions had not been made, and that this condition will con-
tinue hereafter, if the impounding, interruption and diversions
are continued, and the impounding, interruption and diver-
sions, if continued, will greatly lessen the value of the com-

plainant's premises for any use to which the same may be put, not only by reason of the deprivation of the use of the water which is and will hereafter be necessary and valuable for the premises, but the value of the premises now is, and will be hereafter greatly impaired by reason of the bare, unsightly, noxious and unhealthy condition so caused. That all the impounding, interruption and diversions of the water heretofore and now made by the defendants were and are unlawful, and without the license, agreement or consent of the complainant, and against the right of the complainant. That the three defendants are impounding, interrupting and diverting and intend to impound, interrupt and divert the water in gradually increasing quantities and thereby deprive the complainant of the use of the water to which it is entitled as riparian owner, without any right, agreement, leave or license from the complainant to do so. By reason of which impounding, interrupting and diversions of the water, the complainant, during all the time since the recovery of the judgment until the present time, has been, and now is, damaged in the sum of about $10,000 per year, and the complainant will hereafter be damaged in a larger yearly sum therefor, unless the defendants are enjoined by this court from further diversions, interruption and interference with the water. That the damages sustained, and which will be sustained, by the complainant by the acts of the defendants are permanent and irreparable.

The bill prays that the defendants, the East Jersey Water Company, the Montclair Water Company and the Acquackanonk Water Company, and each of them, be enjoined from impounding, confining, retarding, diverting or in anywise interfering with, or hindering, or changing the natural flow of the waters of the Passaic river at the plant of the complainant at Little Falls, or at any other place, or any of the tributaries of the river above the said premises of the complainant, so as to in anywise hinder, interrupt or change the natural flow of the waters of said river to and past the premises of the complainant.

The three defendants, the East Jersey Water Company, the Montclair Water Company and the Acquackanonk Water Company, joined in an answer. This pleading admits certain alle-

gations in the bill, avers that the defendants have no knowledge or information sufficient to form a belief as to certain allegations, and deny certain other allegations.

It is with the allegations which they deny and matter which they set up by way of defence that we are concerned on this motion, in connection, however, with their admissions and protestation of want of knowledge.

They deny that at the time of the impounding, confining, interruption and diversion of the water complainant of right ought to have had and enjoyed and still of right ought to have and enjoy the benefit and advantage of the waters of the river which, during all that time of right ought to have run and flowed in its natural, usual and accustomed channel and which still of right ought to run and flow unto the premises and dye works of the complainant, whereby complainant would be supplied with water sufficient for the operation of the business of dyeing goods. They deny that the complainant for want of the water, of which it was deprived by them, could not use its works or carry on its business as it otherwise would have done, or that the legal right of the complainant to recover against the East Jersey Water Company for the impounding, interruption and diversion of the water at the dam, reservoir and works at Little Falls, was established at law in the action against the East Jersey Water Company, or that the establishment of the legal right of the complainant in that action for the diversion at the dam, reservoir and works, operated to establish or did establish the right of complainant to recover against the defendants for the alleged joint impounding, interruption and diversions by them, or that the right of the complainant is fully established by the action at law with respect to the water as against any or all of the defendants for the purpose of the relief prayed for. They deny that the undiminished flow of water in the river at the plant is a large, or anything but an insignificant element, of value in the plant of complainant for its use in the business of dyeing goods, which is the only business in which the complainant has ever used it, and the only business in which the complainant has been, and is now, engaged, and deny that the diminished flow of water in the river, due to the diversions has greatly or appreciably

diminished the value of the complainant's plant, and deny that the natural flow of the river, if the impounding, interrupting and diversions had not been made, would have carried away the noxious material deposited in the river, or that the impounding, interruption and diversions, if continued, would greatly lessen the value of the complainant's premises for any use to which the same might be put. But the defendants-admit that the value of complainant's premises now is, and probably will be hereafter, largely impaired by reason of the noxious and unhealthy condition of the river due, not to the impounding, interruption and diversions of water by the defendants, but to the discharge of noxious sewage, chemicals and discolored and polluted matter into the river by the city of Paterson and by the complainant itself, and by various dyers who operate their works on the Passaic river above the works of the complainant. They deny that all of the said impounding, interruption and diversions of the water theretofore and then made by them are unlawful, and deny that they are impounding, interrupting and diverting the water in increasing quantities and thereby depriving the complainant of the use of the water to which it is entitled as riparian owner, without any right, agreement, leave or license from the complainant so to do; and deny that the complainant during the time since the recovery of said judgment has been and is damaged by the impounding, interruption and diversion of the water in the sum of about $10,000 per year, and that the complainant will thereafter be damaged in a larger yearly sum therefor unless the defendants are enjoined from further diversions, interruption and interference with the water; and they deny that the damages sustained and which will be sustained by the complainant by the alleged illegal acts of the defendants are permanent and irreparable.

Aside from admissions, protestations of want of knowledge and denials, the defendants, by way of new matter, say, that, notwithstanding their impounding of the water of the Passaic river and their diversions thereof, complained of in the bill, there has at all times remained in the Passaic river and flowed past the complainant's works, sufficient water available for reasonable riparian uses, and the fact that the complainant ceased to take

its water-supply from the Passaic river since about November, 1905, was not because of insufficient water available for its uses, but because the water in the Passaic river, though sufficient in quantity, had become unfit for the complainant's uses through pollution, not caused by them, but caused by the city of Paterson, and by the complainant itself, and by other dyers and manufacturers whose works were, and are, located above the complainant's works on the Passaic river; that ever since the complainant has occupied its works on the Passaic river, and during the period that it took its supply of water from that river opposite its works, and at times on either side of the river, and more recently during the whole period that it has taken its supply of water from wells and from the Passaic Water Company, through what is known as the dyers' pipe, through which the supply of water is taken from the Passaic river above the Great Falls, in the city of Paterson, it has always used that water-supply for the dyeing of fabrics, whereby the water has been discharged into the Passaic river by the complainant below its dye works in a polluted condition, and in such a condition as to constitute a public nuisance, and they aver that if they had not impounded or diverted any water from the Passaic river at any time, the use that the complainant would have made of the water of which it alleges the defendants deprived it, would have been in like manner for the dyeing of fabrics, whereby the water would have been discharged into the river by the complainant, below its dye works, in a polluted condition, and would have been a common nuisance, and at all events it would have been an unriparian use of the water.

As to the judgment referred to in said bill, recovered in the supreme court, wherein the complainant was plaintiff and the East Jersey Water Company was defendant, and which is claimed by the bill to have established the complainant's right against the defendants to recover against them for the alleged joint impounding, interruption and diversion of the waters of the Passaic river at the works at Little Falls by the defendants, they say that, subsequently, and on or about July 27th, 1914, the complainant (as plaintiff) brought another suit against them (as defendants) in the supreme court to recover damages for an

alleged impounding and diversion of the waters of the Passaic river by them at Little Falls from June 13th, 1912, to the date of the trial of the action, and that such proceedings were had that judgment was recovered therein on February 18th, 1915, in favor of the plaintiff and against the defendants for the sum of $8,849.59, including costs; that in that action one of the issues as between the complainant, as plaintiff, and the East Jersey Water Company, as defendant, was whether the judgment referred to in the bill as having been previously recovered by the complainant, as plaintiff, against the East Jersey Water Company, as defendant, concluded the East Jersey Water Company (as was claimed by the complainant as plaintiff) and prevented and estopped it from alleging or setting up certain matters and defences which had been adjudged and decided against it, the East Jersey Water Company, as defendant, and in favor of the complainant, as plaintiff, by the judgment in said former action; the East Jersey Water Company, as defendant, claiming in the second action that the first action in which judgment was recovered by the complainant against the East Jersey Water Company was brought to recover (as the fact was) damages for a diversion of water by the East Jersey Water Company, during a period different and distinct from that in respect of which the East Jersey Water Company, as defendant, was charged with diverting water in the second action, and that there was no identity between the second action and the first action either in the thing sued for, the cause of action, or the persons and parties to the respective actions; that the second judgment against the defendants was afterwards reversed by the court of errors and appeals, and the record remitted to the supreme court for retrial, and that case is now pending in the said supreme court, and may be noticed for trial at any time by the complainant; that in reversing the second judgment, the court of errors and appeals necessarily held that the East Jersey Water Company was not concluded in the second action by the judgment in the first action; and as to the defendants the Montclair Water Company and the Acquackanonk Water Company, they were not parties to the first action and were not bound by the judgment therein.

That although complainant was well aware on June 13th, 1912, when it commenced its first action against the East Jersey Water Company, and for many years previous thereto, that that company was impounding and diverting the waters of the Passaic river at Little Falls for the use of the inhabitants of the cities of Paterson and Passaic and other municipalities, and for the municipal uses of those cities and municipalities, and that the supply of water for the uses of those cities and municipalities was essential to the health, comfort and lives of their inhabitants, no injunction was sought by complainant at that time, or at any previous time, to enjoin the East Jersey Water Company from impounding and diverting the waters of the Passaic river, nor at any time subsequently thereto to enjoin the defendants the Montclair Water Company and the Acquackanonk Water Company, until on or about May 9th, 1917, when the present suit was instituted; that the complainant during all that time acquiesced in the impounding and diversion of the waters by the defendants for said municipal purposes and contented itself with experimenting in law suits seeking to recover from the defendants damages claimed to have been sustained by it as a result of the impounding and diversions of the waters, and that it was only when the complainant's judgment in the supreme court against the defendants in the second suit was set aside (as it was), by the court of errors and appeals on the ground that the trial judge had erred in refusing to charge, as requested by counsel for the defendants, as defendants in that action, as follows:

"(1) If they [the jury] should find that the plaintiff would use the diverted water, if it were not diverted, for the purpose of further polluting the river, then the plaintiff cannot claim more than nominal damages from the defendants, who stand in the shoes of the municipalities whom they are supplying with the water, for depriving the plaintiff of that water. (2) That the plaintiff had no right to complain of the diversion by the defendants if you [the jury] find that the only damages suffered was being thereby prevented from committing a nuisance."

That the complainant filed its present bill of complaint praying for an injunction, and the defendants submit that the

complainant has acquiesced in the impounding and diversion of the water by them for an unreasonable length of time, and that it would now be inequitable to the defendants, and to the inhabitants of the cities and municipalities whom they supply with water, at this late day, to enforce an injunction against them, but that the complainant should be left to its legal remedy against the defendants, if it has any under the circumstances.

That the complainant has been operating its dye works at their present site on the Passaic river, in the city of Paterson, since in or about the year 1887, and that in or about the summer of 1897, the East Jersey Water Company commenced to erect its reservoir and works, now owned and operated by it at Little Falls, and that it completed them in or about the month of November, 1899, at an expense of some $3,400,000; that it was a matter of common knowledge throughout the community of Paterson and elsewhere prior to the erection of those works, and during their construction, that they were being erected for the purpose of enabling the East Jersey Water Company to furnish water supplies therefrom to the cities of Paterson and Passaic and various other municipalities, and that the result of their operations would necessarily be to substantially diminish the flow of water in the Passaic river below the point of diversion; that the complainant was well aware and had full knowledge of these facts, but took no proceedings at that time to enjoin the East Jersey Water Company from erecting the works, but stood mutely by, permitting the said East Jersey Water Company to expend the sum of nearly $3,500,000 in the erection of its works; and defendants submit that for this reason the complainant should now be held estopped from obtaining an injunction against them, but that it should be left to its legal remedy against these defendants, if it has any under the circumstances.

That complainant is one of a number of dyeing concerns in the city of Paterson who carry on their business below the Great Falls and above East 12th street in the city of Paterson, all of whom, including the complainant, are jointly polluting the Passaic river by casting their sewage and discharged chemical waste water into it, and, were it not for that pollution, the cities of Newark, Jersey City, Paterson and Passaic, and the various

other municipalities, which use up the water which is diverted from the Passaic river by the defendants, and by the Passaic Water Company and by the cities of Newark and Jersey City, could take and use that water and yet leave sufficient in the river for all legitimate uses of the dye houses and other riparian owners below the points of diversion, including the complainant, and that there would be plenty of water left in the river for their uses, if there were no pollution in it; and the defendants submit that in these circumstances the complainant does not come into this court, seeking an injunction, with clean hands, and should be denied any equitable relief on that account.

The defendants further aver that the Passaic river and its tributaries above Little Falls, constitute the only available source from which water in sufficient quantities can be provided for the cities and towns of northern New Jersey, and that the supply is more than adequate, not only for the present, but for all future needs within the bounds of reasonable forecast, if the waters are properly impounded and protected from pollution; that all the water now taken by the defendants is taken under legislative authority for public uses of an imperative character, and, apart from the reason given above why the complainant is not entitled to the relief sought for, that the injury, if any, to the complainant, from the impounding and diversion of the waters, is nominal and inconsequential; that if, however, the complainant should be entitled to any relief in this court (which the defendants deny), then they offer to pay to the complainant the damages, if any, resulting from the taking by them of the water of the Passaic river, or which may result therefrom up to the full capacity of their mains; such damages to be ascertained by this court, pursuant to its practice in like cases.

Counsel for complainant on the oral argument, and in their brief, asserted that the complainant is seeking the protection of its rights as riparian owner by injunction upon equitable terms, namely, that an injunction issue unless the defendants shall cause complainant's rights to be condemned at law. This condition is not tendered in the bill, as well it might have been, but, for that matter, even though it were not conceded by complainant. the court would have the right to impose it.

The defendants, in their answer, as already noticed, submit that if the complainant shall be entitled to relief they offer to pay the complainant damages, if any, resulting from the taking by them of the waters in question, such damages to be ascertained by this court pursuant to its practice.

It is claimed on behalf of the complainant that its right to this relief under the facts submitted by the answers, is settled by this court in *Paterson* v. *East Jersey Water Co., 74 N. J. Eq. 49; affirmed,* for the reasons stated by Vice-Chancellor Emery, *77 N. J. Eq. 588.* I shall, for brevity, call this the *Paterson Case.*

An examination of this case makes it apparent that the defendants' admitted diversion of the waters in the case at bar is substantially the same as in the one adjudicated. The defendants here as there claim that the diversion causes no appreciable injury to the complainant, a lower riparian owner, and that the maxim *de minimis non curat lex,* applies. But that question was decided adversely to the defendant in the *Paterson Case,* the defendant being one of the defendants here, and that in the *Paterson Case* the diversion was less than in the case before me. On this question Vice-Chancellor Emery said in the *Paterson Case* (at *p. 86*) :

"On this branch of the case, therefore, I reached the conclusion that the diversion of the water by the defendant for purposes of sale is an infringement of the complainant's right as a lower riparian owner to the continued flow of the stream, and that without proof of any actual or perceptible damage, so far as the establishment of its legal right is concerned, if the diversion is of such a perceptible and sensible amount as not to be excluded under the maxim *de minimis,* complainant is entitled to resort to this court for protection, in view of the fact, against defendant's claim of the right to divert and to continue the diversion. If this view be correct, the examination in detail of the evidence bearing upon the matter of actual damage, and the extent to which the diversion has so far affected the use and enjoyment of complainant's riparian lands, becomes unnecessary for the purpose of settling the complainant's right; but it is of importance in other aspects of the case, viz., as affect-

ing either the right to an injunction or the terms and conditions upon which an injunction should be issued."

And at *p. 98* he said:

"Assuming complainant's right to the protection of this court to be established, the question of greatest difficulty in the case relates to the manner in which the protection shall be given, and the terms and conditions, if any, which should be imposed. Relief in equity should certainly extend, I think, to a declaration of complainant's right, but under the general practice of the court, and independent of statute, such declaration can be made only as incidental to and the basis of some equitable relief. *3 Dan. Ch. Pr.* (*6th Am. ed.*) **2180, note*. This power has been given to the court of chancery by statute in England, and in a leading case (*Swindon Water Co. v. Wilts & Berks Canal Co., supra*) was followed in directing the injunction. See *1 Seton Dec. p. 214.*"

The defendants lay stress upon Vice-Chancellor Emery's observation that in his view the maxim *de minimis* in the *Paterson Case* made examination of the evidence bearing upon the actual damage unnecessary, but that such examination became of importance as affecting the right to an injunction or the terms and conditions upon which it might issue, and they claim that in this last aspect the answer should stand and evidence be taken thereunder to be considered on the question of the issuance of an injunction, and terms, if for no other purpose. But it is to be borne in mind that the *Paterson Case* was prosecuted, heard and determined before the Chancery act of 1915, and at a time when an answer could not be objected to as raising no defense, that is demurred to, practically. And these observations of the vice-chancellor were made in his opinion after the case had been heard and the evidence was all in. There had been no preliminary question about it.

Upon the state of pleadings which, to my mind, admittedly show that the diversion of the water is sensible and appreciable, it is unnecessary and undesirable to send a complainant to a final hearing and permit of the taking of voluminous testimony in order that a merely incidental matter may be determined, that is, the terms upon which an injunction should issue,

when, in fact, that determination can readily be made by the court upon mere motion, with leave to take affidavits if necessary. If it be determined, as it must in this case, on the pleadings, I think, that the answer does not set up a valid defence to the complainant's right to an injunction, and the question of the issuance of an injunction is necessarily decided against the defendant as matter of law, the question as to the terms upon which it should issue is a collateral matter, quite easily disposed of in the manner which I have indicated. In proceedings by condemnation or otherwise, to ascertain the extent of the complainant's injury, opportunity would, of course, be afforded the defendants to go into the question of the *quantum* of damages there, and the injury might prove to be great or little; but, on this question of injunction, it is only necessary to ascertain that there is injury for the purpose of awarding relief, without examining into the extent of that injury.

The defendant the East Jersey Water Company in the case before me as in the *Paterson Case,* appears to be a private corporation not possessing the power of eminent domain; and this, too, would appear to be the case with the other defendants, the Montclair Water Company and the Acquackanonk Water Company, so far as any allegation in the bill is concerned. And there is no direct averment in the answer to the effect that these other defendants, the Montclair Water Company and the Acquackanonk Water Company, possess the power of eminent domain. It is, however, stated in the answer that although the complainant for a long time has been aware that the defendant the East Jersey Water Company was impounding and diverting the waters of the Passaic river at Little Falls for the use of the inhabitants of the cities of Paterson and Passaic and other municipalities, that the complainant during all that time acquiesced in the impounding and diversion of the waters by "these defendants" for such municipal purposes, making it thereby appear that the defendant the Montclair Water Company and the Acquackanonk Water Company, as well as the East Jersey Water Company, were supplying the diverted water to municipalities for municipal uses and purposes, and the allegation is, that the complainant, during all the time men-

CASES IN CHANCERY, 1917–1918.        417

*88 N. J. Eq.*   Weidmann Silk Dyeing Co. *v.* E. Jersey Water Co.

tioned, acquiesced in the impounding and diversion of the waters and instead of seeking injunctive relief experimented in law suits seeking to recover from the defendants damages claimed to have been sustained by it as a result of the impounding and diversion of the waters. Proper pleading required that the averment should be that the complainant "brought certain suits at law," or words to that effect, rather than accusing the complainant "with experimenting in law suits," which, if not scandalous, is the employment of non-judicial language—certainly so in a pleading. However, no point is made of this. The answer also further avers that it would be inequitable to the defendants and to the inhabitants of the cities and municipalities whom they supply with water to enforce an injunction against them, but that the complainant should be left to its legal remedy against them, if any it has. Here again is what amounts to an averment that the defendants are impounding the water and actually diverting it to municipalities, for municipal use. The defence thus sought to be raised is that an injunction should not issue because it will ultimately affect the municipalities who receive a water-supply from the defendants.

On the question as to the condition upon which an injunction in this class of cases may issue unless compensation be made, Vice-Chancellor Emery said in the *Paterson Case* (at *p. 93*):

"Complainant, having established its right, is entitled, if the general course of practice be followed, to the equitable relief by which alone the right can be protected, an injunction against its violation. The defendant, however, contends that the case comes within an exception to this general rule protecting property rights by injunction, and under which courts of equity, where the property in question is actually taken for a public use, and serious injury would result from the injunction, without corresponding benefit or advantage to the public, will decline to issue an injunction, if it is a case where compensation can reasonably be made and defendant is willing to make it. And the defendant here, by its answer, offers to make compensation, under the direction of the court, for damages resulting from the taking of the water 'up to the full capacity of its mains.' This course of directing an injunction only in case

27

defendant fails to make compensation in damages has been taken in several cases in this state referred to by defendant's counsel, but, with one exception, has only been taken against complainant's consent in cases where the defendant had the statutory right to appropriate on making compensation, but had taken possession without proceedings for compensation."

In this case, as already pointed out, complainant seeks an injunction upon the equitable condition that it shall issue only upon defendants refusing to make compensation, and defendants, by their answer, offer to make compensation if complainant's right be established.

In *Sparks Manufacturing Co.* v. *Town of Newton, 57 N. J. Eq. 367, 392, 393,* Vice-Chancellor Pitney held upon the authorities in our state, which he cites, that where a riparian owner seeks an injunction to restrain a corporation from diverting water for public purposes which it has power to condemn, and the corporation offers to pay such compensation as the court shall deem just, and the complainant consents, the court has jurisdiction to ascertain the amount of compensation. This case was cited by Vice-Chancellor Emery in the *Paterson Case, 74 N. J. Eq.* (at *p. 99*), with approval, and his decision, as stated, was affirmed on his opinion. *Sparks Manufacturing Co.* v. *Newton* was affirmed by the court of errors and appeals *sub nom. Ingersoll* v. *Newton, 60 N. J. Eq. 399,* wherein Mr. Justice Dixon, writing the opinion for the court of errors and appeals, said that the conclusions expressed by Vice-Chancellor Pitney as to the power and duty of the court of chancery, on the pleadings and evidence, to fix the compensation that the defendant ought to pay to the complainant as a condition to withhold the injunction to which it would otherwise be entitled, the court of errors and appeals agreed, and dissented only with respect to the amounts awarded. See, also, *Speer* v. *Erie Railroad Co., 68 N. J. Eq. 615,* wherein Mr. Justice Swayze, writing the opinion for the court of errors and appeals, observed (at *p. 221*) that the power of the court of chancery to award damages where both parties submit themselves to the jurisdiction of the court, is established, citing *Sparks Manufacturing Co.* v. *Newton, supra,* and *Ingersoll* v. *Newton, supra.*

In the brief submitted for the defence it is asserted that although it does not appear in the pleadings, yet the defendants the Montclair Water Company and the Acquackanonk Water Company are both public service corporations enjoying powers of eminent domain under their charters, and are obligated to furnish the waters which they divert to the public, composing the municipalities whom they supply with such water; and that the defendant the East Jersey Water Company (as appears in the answer), though organized under the General Corporation act, is under contract with Bayonne, Kearney, Harrison, East Newark, Little Falls and Nutley to supply all of the requirements of those municipalities during the life of "the contract," and that those municipalities possess full rights of eminent domain for the purpose of appropriating water from streams for their lawful purposes.

Defendants in their briefs also assert that it would be an extraordinary exercise of the right of injunction to cut off the water supplies of these municipalities without giving them an opportunity to condemn and to pay compensation, and without any of the municipalities who would be affected by the injunction being made parties to the suit, and assert that such municipalities were held to be necessary parties in *Wilson, Attorney-General,* v. *East Jersey Water Co., 78 N. J. Eq. 330.* The decision in that case was that the court would not determine the validity of contracts between municipalities and a corporation for water supplies from the streams of this state unless the parties interested in the contracts were parties to the suit. It is a sufficient answer to say that there is no question of the validity of contracts before the court in the case at bar, and, as remarked by Vice-Chancellor Stevens in the *Wilson Case* (at *p. 345*), no objection is made in the answer to the absence of parties.

Vice-Chancellor Emery, in the *Paterson Case* (at *p. 103*), observed that—

"If any of the water companies or municipalities supplied by defendant have the ultimate power of condemning the water rights in question, there would seem to be no reason why they should not be allowed to do so upon compensation in aid of the

defendant's diversion, making it to that extent strictly a diversion for public use; for while such water company or municipality cannot, by contract or otherwise, delegate to the defendant its power of condemnation, it may itself exercise its own rights of condemnation in connection with a contract with the defendant company. The decision in *Slingerland* v. *Newark* (*Supreme Court, 1891*), *54 N. J. Law 62,* seems to cover this point."

Upon this branch of the case I conclude that the law arising upon the admitted facts is that the defendants the Montclair Water Company and the Acquackanonk Water Company may condemn, and the East Jersey Water Company may make compensation to be ascertained in and by this court, unless all of the municipalities which take from it will condemn in aid of its diversion.

The equitable defence of estoppel asserted in the answer, namely, that the complainant has acquiesced in the impounding and diversion by the defendants for an unreasonable length of time, and that it would be inequitable to the defendants to now enjoin them, and that the defendant the East Jersey Water Company, long since commenced to erect and completed its water works on the Passaic river at great expense, is answered by Vice-Chancellor Emery in the *Paterson Case* (at *p. 96*), where he said:

"But whether served (with notice) or not, there is, in my judgment, no estoppel against the complainant's protection of its rights as riparian owner by mere silence or failure either to give notice or to bring suit immediately. In *Simmon* v. *Paterson* (*Court of Errors and Appeals, 1899*), *60 N. J. Eq. 385, 392,* it was held that the acquiescence of the riparian owners, continued for years, did not deprive them of their right to property in the stream, although it might affect the right to injunction. This legal right of the riparian owner is barred only by an actual grant or uninterrupted enjoyment for twenty years. *Hutchinson* v. *Coleman* (*1828*), *10 N. J. Law 74, 78; Campbell* v. *Smith, 8 N. J. Law 140; 14 Am. Dec. 400.* And an equitable remedy in aid of the legal right is not ordinarily barred by mere acquiescence in a less period, independent of any circumstances raising special equities. None such appear in

this case. The complainant here did not by any act or conduct on its part induce the expenditures of defendant on its own land and for its own purposes, and defendant proceeded with them at its own risk. Complainant, having given notice, was not bound to proceed at once, either at law or in equity, in order to preserve its rights, but was at liberty to delay such proceedings until the extent of the diversion was apparent, if defendant chose to proceed. This claim of estoppel, so far as it is set up as a bar to equity relief by way of injunction against any part of the diversion, must therefore be overruled."

As to the equitable defence that the complainant does not come into court with clean hands because, with others, it is polluting the Passaic river, and that were it not for that pollution Newark, Jersey City, Paterson, Passaic and the various other municipalities which use up the water which is diverted by the defendants, could take and use that water and yet leave sufficient in the river for all legitimate uses of the dye houses and other riparian owners, including the complainant, below the point of diversion, and that there would be plenty of water left in the river for their uses were it not so polluted, it would seem to be sufficient to say that as the defendants admittedly divert the water above and not below the riparian lands of the complainant, it is not available to the defendants to assert that if things were not as they are but as they might possibly otherwise be that the complainant is not entitled to relief, especially as the thing complained of in the bill, namely, the palpable and appreciable diversion is caused by the defendants, who, as a fact, are in nowise injured by the conduct of the complainant. In *1 Pom. Eq. Jur. (3d ed.)* § *399*, it is laid down:

"Broad as the principle is in its operation, it must still be taken with reasonable limitations; it does not apply to every unconscientious act or inequitable conduct on the part of a plaintiff. The maxim, considered as a general rule controlling the administration of equitable relief in particular controversies, is confined to misconduct in regard to, or at all events connected with, the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties, and arising out of the transaction : it does not extend to any misconduct, however gross, which is unconnected with the matter in litigation, and with which the opposite party has no concern. When a

court of equity is appealed to for relief it will not go outside of the subject-matter of the controversy, and make its interference to depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against the defendant, or the relief which he demands."

In *Wilson* v. *Bird, 28 N. J. Eq. 352,* it was held that one who comes into a court of conscience to enforce a forfeiture must come with skirts free from blame.

In *Lewis' Appeal, 67 Pa. St. 166,* the court said:

"The rule that he who comes into equity must come with clean hands must be understood to refer to willful misconduct in regard to the matter in litigation. *Snell Eq. 25.* All the illustrations given in *Fran. Max. Eq. 5,* under the maxim, as he states it, He that hath committed iniquity shall not have equity, show this."

It is alleged and admitted that in an action at law, in the supreme court in 1912, complainant, as plaintiff, recovered against the East Jersey Water Company, as defendant, final judgment for damages sustained by the complainant for deprivation of water of the Passaic river of which the complainant had been deprived during the six years before action brought, which judgment was paid by the defendant in 1914; and the complainant alleges that its legal right to recover against the East Jersey Water Company for the diversion of the water at its works at Little Falls was established in that action, and that the diversions of the defendants the Montclair Water Company and the Acquackanonk Water Company jointly with the defendant the East Jersey Water Company, were made at the works at Little Falls theretofore owned and operated by the defendant the East Jersey Water Company, and that the establishment of that right in the action at law against the last-named company operated to establish, and did establish, the right of the complainant to recover against the three defendants for jointly interrupting and diverting the waters at Little Falls, and that the right of the complainant is fully established by that action at law with respect to the diversion, as against all of the three defendants named, for the purpose of the relief prayed in the bill.

The defendants aver that in 1914 the complainant, as plaintiff, brought another suit against the three defendants, the East Jersey Water Company, the Montclair Water Company and the Acquackanonk Water Company, as defendants, in the supreme court, to recover damages for an alleged impounding and diversion of the waters of the Passaic river by them at Little Falls from the date of the first suit (which was against the East Jersey Water Company only) and the date of the trial of the action against the three defendants, and that judgment was recovered therein by the plaintiff against them in 1915; that one of the issues as between the complainant and the three defendants, was, whether the judgment previously recovered by the complainant against the defendant the East Jersey Water Company, concluded that company and the other two defendants in the second action, which was commenced and prosecuted to judgment against all three. This averment leads necessarily to the conclusion that that issue in the second case was decided against the defendants. It is, however, averred by the defendants that the second judgment, the one against the three defendants, was reversed by the court of errors and appeals, and that that suit awaits retrial. It is also averred that in reversing the second judgment the court of errors and appeals "necessarily held" that the East Jersey Water Company was not concluded in the second action by the judgment in the first one, nor were the defendants the Montclair Water Company and the Acquackanonk Water Company, because they were not parties to the first action and were not bound by the judgment therein.

It would seem to be quite beside the mark for the defendants to aver that the court of errors and appeals in reversing the second judgment "necessarily" held any particular thing, when they proceed themselves in their answer to set forth exactly what the court of errors and appeals did hold in setting aside the judgment and granting a new trial. It was that the trial judge erred in refusing to charge the jury that if they found that the plaintiff would have used the diverted water, if it had not been diverted, for the purpose of further polluting the river, then the plaintiff could not claim more than nom-

inal damages from the defendants, and that the plaintiff had no right to complain of the diversion by the defendants if the jury found that the only damage the plaintiff suffered was being prevented from committing a nuisance. So it comes to this: the defendants aver that one of the issues in the trial at law between the complainant, as plaintiff, and them, as defendants, was, as to whether they were all of them concluded with respect to the plaintiff's right to recover damages by the judgment in the first suit, in which second suit, the one in which that issue was raised, judgment was recovered by the complainant; and then they aver that a new trial was granted upon grounds which they state, neither of which touch the question of the complainant's right to recover, which, I take it, is therefore no longer open. This appears to be borne out by the opinion of the court of errors and appeals in setting aside the verdict. *Weidmann Silk Dyeing Co.* v. *East Jersey Water Co., 88 N. J. Law 400.* It is there stated that the defendants requested the court to instruct the jury on the question of damages, under the same state of facts as in two other cases mentioned, and that the views expressed in those cases were applicable to the one then at bar; that the court there held the refusal to be erroneous, and, for the reasons given, the judgment in favor of the plaintiff was reversed and a new trial awarded. The opinion of the court of errors and appeals setting aside the second judgment referred to, namely, the one by the complainant herein, as plaintiff, against the three defendants herein, as defendants, was written in three cases (including the one mentioned) which were tried together before the same jury and were submitted to the court of errors and appeals in like manner upon the same exceptions, without stating what the exceptions were, except, necessarily, that one was an exception to the charge in the two respects in which the charge was held to be erroneous in the two cases mentioned, which were *Augur & Simon Silk Dyeing Co.* v. *East Jersey Water Co. and Jersey City Water-Supply Co.,* defendants, the opinion in which is reported in *88 N. J. Law 273.*

The averment in the answer as to the suit in which the issue as to liability was presented is that which was commenced in

1914. This is a suit in which the new trial has been granted on the question of damages. Rule 72, under the Practice act, provides that in case a new trial is granted it shall be only of the question or questions with respect to which the verdict is found to be wrong, if separable, applies. The pleadings before me do not show what other issues were involved in the exceptions taken and brought before the court for review, but as the only question with respect to which the decision of the trial court was found to be wrong, is in respect to the refusal to charge two requests on the question of damages, it appears that no other questions are open for litigation upon a retrial. This provision of the Practice act applies to new trials granted by the court of errors and appeals, for that act, where applicable, extends to the court of errors and appeals. See *American Life Insurance Co.* v. *Day, 39 N. J. Law 89.* Rule 72 under the Practice act (1912) is now rule 131 of those promulgated by the supreme court, June term, 1913, and by this rule the provision as to limited retrials is expressly made applicable to appeals.

These views make it unnecessary to consider whether, as a principle of substantive law, the judgment in the former suit operates to estop the defendants on the question of liability- - the East Jersey Water Company as a party to that action and the Montclair Water Company and the Acquackanonk Water Company as successors in interest of, and as parties in privity with, the East Jersey Water Company, because they are concluded by the Practice act and rules mentioned.

One other matter remains to be considered, and that is: Are the averments in the answer which contradict and are repugnant to the admissions made in the pleading, capable of saving the case of the defendants on their answer? For instance, the bill alleges and the answer admits that prior to the impounding and diversion of the waters the complainant had used them for the purpose of dyeing goods, and that from 1906 to 1912, the defendant the East Jersey Water Company at a dam, reservoir and works owned and operated by it at Little Falls on the Passaic river above the complainant's premises, impounded and diverted the water of the river during these years by an aver-

age quantity of sixteen million gallons per day. And that from 1912 to the present time the three defendants by concert and agreement among themselves have jointly owned and operated the works at Little Falls and diverted from the Passaic river at that place for their joint and common benefit quantities of water averaging from twenty-one million gallons per day during 1912 to about twenty-three million gallons daily during 1914, and that from then until the present time have constantly diverted and are continuing to divert quantities in excess of twenty-three million gallons daily; also that the water which has been so impounded and diverted and thus prevented from flowing into the works of the complainant has been during all of that time necessary for the use of the complainant in supplying its works and for the operation of its business therein and which would have been so used during all of that time by the complainant in its business if it had not been deprived of the use thereof by the defendants. And further, that by reason of this impounding and diversion by the defendant the East Jersey Water Company from 1906 to 1912 the complainant was deprived of the use of the water in its business for which deprivation the complainant recovered damages by judgment in the action at law already referred to, and that the amount of the judgment was $22,212.00, together with costs, and that the amount of the judgment, with costs and interest, was paid by the defendant the East Jersey Water Company in 1914. It is alleged in the bill, and not denied in the answer, that by reason of the diversion of the waters mentioned the natural flow of water has been so diminished that the banks and bed of the river are rendered bare.

It must be perfectly apparent upon these admitted facts that the impounding and diverting of this water and the consequent deprivation of its use by the complainant, a lower riparian owner, was palpable and appreciable. And yet the defendants in answer say that the injury, if any, to the complainant from this impounding and diversion of the waters is nominal and inconsequential. This last averment of fact is entirely inconsistent with their previous admission of facts to the contrary. An answer in chancery must be consistent, and a defendant

may not insist upon a defence based on the truth of an allegation in a bill which he denies in his answer. *16 Cyc. 808.* What is more he cannot be permitted to insist upon a defence residing in an averment in his answer which is inconsistent and repugnant to an admission made by him in the very same pleading.

Equitable defences must be consistent. *Gilbert* v. *Galpin, 11 N. J. Eq. 445.* An answer may contain within itself such circumstances as will suffice to deprive it of all efficacy. Per Chief-Justice Green, in *Plume* v. *Small, 5 N. J. Eq. 650.* These decisions in *Gilbert* v. *Galpin* and *Plume* v. *Small* were made upon final hearing. But now by the Chancery act (1915) and rule 67 of this court demurrer to an answer, in effect, will lie. And in this situation the power with reference to overruling defective pleas on demurrer in actions at law, is applicable, that is, the answer will be overruled if its averments do not constitute a defence. And the substantive law on this question is the same as that concerning declarations in suits at law which do not state a cause for action.

In *Pope* v. *Skinkle, 45 N. J. Law 39,* it was held that if a pleading appear on its face to be untrue in one of its essential allegations it is bad on demurrer. Now, having admitted in their answer that the complainant is appreciably injured by the diversion of the waters of the Passaic river, the rule that a pleading is to be construed against the pleader, requires that the subsequent averment in their answer that the diversion of the waters is nominal and inconsequential, is to be taken as an untrue statement of an essential averment, and must be held to be bad.

The averment in the answer that notwithstanding the impounding and diversion of the water by the defendants there has at all times remained in the river and flowed past the complainant's works, sufficient water available for reasonable riparian uses, cannot avail the defendants to overcome the admission that the quantity impounded and diverted has been appreciable and damaging to the complainant. This may well be a defence on the question of damages, as may also be the question of polluting the river by the use made of its waters by the complain-

ant, but it is not a valid answer to the claim of the complainant that it is entitled to an injunction against the defendants for depriving the complainant of the quantity of water which it is entitled to have in the flow of the river.

A defendant may not make disserving admissions in an answer responsive to the bill, and then, by way of new matter, plead facts inconsistent with those admissions. In other words, a defendant may not by self-serving statements avoid the effect of disserving ones—at least not unless they amount to confession and avoidance, and they do not in this case.

Finding that the answer as a whole does not constitute a valid defence against the complainant's right to an injunction upon equitable terms, it becomes unnecessary to consider the specific objections to certain parts of the pleading. The answer must, therefore, be struck out. The terms of the order to be made will be settled on motion and on notice.

*Supplemental memorandum. Filed March 15th, 1918.*

The complainant moves for decree and submits a form thereof. The defendants, who have had notice of the motion, also submit a form. The complainant's draft of decree provides for an injunction, but stays its issue during a period to be determined by the court, and provides that if before that time proceedings at law for condemnation of complainant's rights be commenced by the defendants, then that an injunction shall not issue, &c.

The defendants contend that as to the East Jersey Water Company, which does not possess the power of condemnation, damages should be ascertained in this court instead of allowing the companies and municipalities which derive a supply from it, and which have the ultimate power of condemnation, to condemn in aid of that company's diversion.

It is true that defendants in their answer submit that if the complainant shall be entitled to relief they offer to pay damages to be ascertained by this court. There is no like offer in the bill, nor proffered submission to any terms in it, but, in their oral argument and in their brief, counsel for complainant stated that it was seeking protection upon equitable terms, namely,

that an injunction shall issue only in case the defendants shall not cause complainant's right to be condemned at law. There is no offer by the complainant to have damages settled in this court as to the East Jersey Water Company, although defendants desire it. Doubtless this court has a right to impose that as a term, but as the Montclair Water Company and the Acquackanonk Water Company possess the power of condemnation, and may condemn, it will be more congruous to require condemnation also in the case of the East Jersey Water Company, that is, condemnation by the corporations deriving their supply from it, which corporations themselves have the power to condemn. The right to require the defendant the East Jersey Water Company to make compensation ascertained by this court, led me to make observations in the opinion vindicating that power.

The defendants in the form of decree submitted provide for an amendment to the bill so that the complainant shall be made to pray that unless and until the defendant the East Jersey Water Company makes such compensation to the complainant as shall be ascertained by this court to be just, it be enjoined, &c. Of course this relief cannot be granted. A defendant cannot amend a complainant's bill without notice of motion therefor, and none has been given, and not even then, as I view it, without complainant's consent. This is quite different from the court giving complainant leave to amend a bill in a given case because of valid objection to the bill by defendant.

In the opinion I made no allusion to the fact that so far as anything was disclosed in the pleadings it did not appear that the judgments granting new trials in the cases mentioned were by express terms limited to the question of damages. Assuming that these judgments, which were not before me, reversed the verdicts and granted new trials without more, still, I take it that rule 131 of the supreme court operates upon the situation by its own inherent force. It is, I think, to be assumed that the judgments ordering new trials limit them to the question of damages only, but, if not, then I think the rule operates upon the situation, and, in either event, the estoppel on the question of liability is complete.

The decree submitted by the complainant will be signed. The time limit within which condemnation proceedings must be commenced to the end that an injunction may be stayed, will be set for May 1st, 1918. That will give the defendants over six weeks in which to commence proceedings, which is ample for the purpose. An appeal, if taken, will stay proceedings, and if there should be an affirmance on appeal the defendants will have the same time left in which to commence condemnation proceedings, after *remittur* filed in this court, as it had under the terms of the order at the time the appeal was taken.

The drafts of decrees submitted by the complainant in the cases of *Weidmann Silk Dyeing Co.* v. *The Mayor and Common Council of Newark* (43-380), and *Weidmann Silk Dyeing Co.* v. *The Mayor and Common Council of Jersey City* (43-381), will also be signed, with the same time limit set in which condemnation proceedings must be commenced to stay the issuance of injunctions.